UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| POWERCAP PARTNERS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DAVID FLEISCHMANN, ESQ. and LAW OFFICES OF DAVID FLEISCHMANN, P.C.,<br><br>*Defendants.* | 1:20-cv-03428-RRM-RML |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
DAVID FLEISCHMANN, ESQ. and LAW OFFICES OF DAVID FLEISCHMANN, P.C.'s
RULE 12(B) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

FURMAN KORNFELD & BRENNAN LLP

By:  /s/ Aaron M. Barham, Esq.
Aaron M. Barham, Esq.
Andrew R. Jones, Esq.
*Attorneys for Defendants*
*David Fleischmann, Esq. and Law Offices of*
*David Fleischmann, P.C.*
61 Broadway, 26th Floor
New York, NY 10006
T: (212) 867-4100
F: (212) 867-4118
Email: abarham@fkblaw.com
FKB File No. 313.290

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT ......................................................................................... 1

LEGAL ARGUMENT ......................................................................................................... 2

    POINT I:     POWERCAP HAS NOT SUSTAINED "ACTUAL DAMAGES" BECAUSE ITS LITIGATION AND REMEDIES TO SECURE REPAYMENT REMAIN PENDING ................................................................................. 2

    POINT II:     POWERCAP FAILS TO PLEAD HOW ANY ALLEGED FAILURE TO PROVIDE USURY LAW ADVICE PROXIMATELY CAUSED ITS ALLEGED DAMAGES ................................................................................ 4

        A:     POWERCAP'S LOANS ARE NOT "UNENFORCEABLE" BECAUSE NEW YORK'S CIVIL USURY STATUTE DOES NOT APPLY TO LOANS ABOVE $250,000 ............................................................ 4

        B:     THERE IS NO STATUTORY AUTHORITY FOR VOIDING A LOAN THAT VIOLATES THE CRIMINAL USURY LAW ................................................................ 5

        C:     POWERCAP'S ALLEGED DAMAGES (IF ANY) HAVE BEEN PROXIMATELY CAUSED BY THEIR FAILURE TO PURSUE COLLECTION OR ENFORCEMENT REMEDIES ............................ 6

    POINT III:     POWERCAP IS A "SOPHISTICATED CLIENT" WHO WAS SOLELY RESPONSIBLE FOR SETTING THE TERMS OF ITS LOANS ............................................................ 6

        A:     THE STANDARD OF CARE DID NOT REQUIRE ATTORNEY FLEISCHMANN TO PROVIDE ADVICE ABOUT TERMS OF POWERCAP'S LOANS ............................................................................. 6

    B: POWERCAP'S OWN BUSINESS DECISIONS PROXIMATELY CAUSED ITS ALLEGED DAMAGES ................................................................................................7

POINT IV: NO LEGAL MALPRACTICE WAS COMMITTED ................................8

CONCLUSION ................................................................................................................8

# TABLE OF AUTHORITIES

Page

*4777 Food Serv. Corp. v. DeMartin & Rizzo, P.C.*, 2013 N.Y.
Misc. LEXIS 5520 (Sup. Ct., Suffolk Co. 2013)..................................................................7

*Accord Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC*,
No. 13 Civ. 6562 (RJS), 2015 WL 4392081, at *5 n.4 (S.D.N.Y. July 15, 2015) ....................5

*Adar Bays, LLC v. GeneSys ID, Inc.*, 341 F. Supp. 3d 339, 352 (S.D.N.Y. 2018)....................5

*Brown-Jodoin v. Pirrotti*, 138 A.D.3d 661 (2d Dept. 2016) ................................................6

*DiPlacidi v. Walsh*, 243 A.D.2d 335 (1st Dept. 1997) ........................................................8

*EMA Fin. v. AIM Expl.*, 2019 WL 689237, at *7 (S.D.N.Y. Feb. 19, 2019)............................5

*Jiraud v. Newman*, No. 22398/2018E, 2018 WL 10812339, at *3
(Sup. Ct. Bronx County. May 15, 2018)..............................................................................3

*Kahan Jewelry Corp. v Rosenfeld*, 295 A.D.2d 261, 261 (1st Dept. 2002)..........................1,3

*Lopes v. Mangiatordi, Maher & Lemmo, LLC,* 6 Misc 3d 1004[A]
800 N.Y.S.2d 349, 2004 NY Slip Op 51722[U] (Sup. Ct., Queens County 2004) ...................3

*Merz v. Seaman,* 265 A.D.2d 385, 389 (2d Dept. 1999)......................................................7

*Parametric Capital Mgt., LLC v Lacher*, 15 A.D.3d 301, 302 (1st Dept. 2005)....................1,3

*Pudalov v. Brogan,* 103 Misc. 2d 887, 892, 427 N.Y.S.2d 345
(Sup. Ct., Nassau County 1980)..........................................................................................3

*Sabalza v. Salgado*, 85 A.D.3d 436, 437 (1st Dept. 2011) ..................................................6

*Slinin v. Marina Trubitsky & Assoc., PLLC,* 2010. N.Y. Slip Op.
31335(U) (N.Y. 2010)..........................................................................................................3

*Stolmeier v. Fields*, 280 A.D.2d 342, 343, (1st Dept. 2001)................................................7

*Town of North Hempstead v. Winston & Strawn LLP*, 28 A.D.3d
746 (2d Dept. 2006) ............................................................................................................7

*Venture Mortg. Fund, L.P.*, 282 F.3d 185, 90 n.4 (2d Cir. 2002).........................................5

**STATUTES**

Fed. R. Civ. P. 12(b)(6)..................................................................................……1,8

New York General Obligations Law (GOL) §5-501 ........................................…….4

GOL §5-511 .......................................................................................................4

GOL §5-521 .......................................................................................................4

## INTRODUCTION

Defendants David Fleischmann, Esq. and the Law Offices of David Fleischmann, P.C. ("Attorney Fleischmann") respectfully submit this Reply Memorandum of Law in further support of their motion for an Order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing Plaintiff Powercap Partners, LLC's ("Powercap") complaint in its entirety.

## PRELIMINARY STATEMENT

In opposition to dismissal, Powercap repeats the same deficient allegations from its complaint and desperately asserts that discovery is needed regarding its own failure to enforce its security interest and $1,015,000 judgment against the non-party debtors, the Pollacks. Most critically, Powercap fails to meaningfully distinguish New York case law holding that its related action against the Pollacks must be fully litigated before a legal malpractice action against Attorney Fleischmann may be properly commenced. Moreover, Powercap fails to address its failure to plead "but for" proximate causation because there is no statutory authority for voiding a loan that does not violate New York's civil usury statute.

Accordingly, Plaintiff's complaint remains subject to dismissal for the following reasons:

First, Powercap fails to sufficiently articulate the "actual damages" element of its legal malpractice claim because there is no disposition adverse to Powercap concerning the enforceability of its $1,015,000 judgment against the Pollacks, and because its related litigation concerning ownership of the three secured properties is still ongoing. *See Parametric Capital Mgt., LLC v Lacher*, 15 A.D.3d 301, 302 (1st Dept. 2005); *Kahan Jewelry Corp. v Rosenfeld*, 295 A.D.2d 261, 261 (1st Dept. 2002).

Second, Powercap still fails to sufficiently plead how any alleged failure to provide usury law advice proximately caused its loans to be "unenforceable." Because Powercap's loans were

both above $250,000, the loans are not "void" or "unenforceable." Moreover, Plaintiff's apparent failure to enforce its $1.015M judgment or pursue collection remedies prevents them from establishing Attorney Fleischmann's alleged conduct, rather than its own conduct or that of the Pollacks, proximately caused its alleged damages.

Third, Attorney Fleischmann was not required to advise about the terms of Powercap's loans, when he was only retained to memorialize an agreement to which Powercap and the Pollacks agreed. While Powercap argues that discovery is required regarding its *own* business decision to extend high interest loans, the documentary evidence submitted demonstrates that Powercap merely requested that Attorney Fleischmann prepare loan documents reflecting the terms to which Powercap and the Pollacks agreed, rather than advice about the usury laws or on the terms of Powercap's loans.

For these reasons as set forth below, it is respectfully requested that Plaintiff's complaint be dismissed with prejudice.

**LEGAL ARGUMENT**

**POINT I**

**POWERCAP HAS NOT SUSTAINED "ACTUAL DAMAGES" BECAUSE ITS LITIGATION AND REMEDIES TO SECURE REPAYMENT REMAIN PENDING**

Powercap still fails to sufficiently articulate the "actual damages" element of its legal malpractice claim because there is no disposition adverse to Powercap concerning the enforceability of its judgment against the Pollacks, and because its related litigation concerning ownership of the three secured properties is still ongoing. In New York, it is indisputable that underlying actions seeking the same or related damages must be fully litigated and closed before a legal malpractice action may be properly commenced.

Contrary to the inapplicable cases cited in Powercap's brief, Powercap cannot advance the "actual damages" element of its legal malpractice claim unless or until there is a determination or disposition adverse to Powercap in its related litigation against the Pollacks. In *Parametric Capital Mgt., LLC v Lacher*, 15 A.D.3d 301, 302 (1st Dept. 2005), the First Department affirmed dismissal of a legal malpractice claim because the subject matter of those services, a related arbitration proceeding, was still pending when the amended complaint was served. Thus, as here, the plaintiff's complaint failed to articulate actual damages because there was no adverse decision that, but for defendants' alleged negligence, would have been more favorable to plaintiff.

Similarly, in *Kahan Jewelry Corp. v Rosenfeld*, 295 A.D.2d 261, 261 (1st Dept. 2002), dismissal was affirmed because a related foreclosure action was still pending at the time of defendants' motion. Again, as here, the complaint failed to articulate actual damages because the plaintiffs had not yet sustained any actual damages attributable to the alleged malpractice.

Numerous New York courts follow this appellate precedent. *See Lopes v. Mangiatordi, Maher & Lemmo, LLC,* 6 Misc 3d 1004[A], 800 N.Y.S.2d 349, 2004 NY Slip Op 51722[U] (Sup. Ct., Queens County 2004)(Court dismissed a malpractice claim because plaintiff could not show that he had sustained damages caused by defendant-attorney's alleged negligence until after the resolution of an underlying personal injury action against a third party); *Slinin v. Marina Trubitsky & Assoc., PLLC,* 2010. N.Y. Slip Op. 31335(U) (N.Y. 2010)("it appears that the underlying action may not be concluded, and that plaintiffs had not yet sustained any actual damages attributable to the alleged malpractice"); *Pudalov v. Brogan,* 103 Misc. 2d 887, 892, 427 N.Y.S.2d 345 (Sup. Ct., Nassau County 1980) ("[a] necessary element in a cause of action for legal malpractice is damages . . . [and] there can be no legal damages until the underlying case is resolved[]"); *Jiraud v. Newman*, No. 22398/2018E, 2018 WL 10812339, at *3 (Sup. Ct. Bronx County. May 15, 2018)

("Here, the medical malpractice action remains active and pending; there is no evidence of any determination or disposition adverse to plaintiff. Movants having negated at least one element of the malpractice claim, the claim must be dismissed.")

Here, as in the above cases, Powercap's damages claims are not ripe because there has been no disposition adverse to Powercap stating that it cannot enforce its judgment against the Pollacks or its security interest in the three Brooklyn properties. The fact that Powercap's state court case is not being litigated by Attorney Fleischmann is a distinction without a meaningful difference to the above-cited cases. Until there is a determination or disposition against Powercap concerning the enforceability of its judgment against the Pollacks or its security interests in the three properties, Powercap's complaint should be dismissed for failing to plead the actual damages element of its legal malpractice cause of action.

## POINT II

### POWERCAP FAILS TO PLEAD HOW ANY ALLEGED FAILURE TO PROVIDE USURY LAW ADVICE PROXIMATELY CAUSED ITS ALLEGED DAMAGES

#### A. Powercap's Loans are Not "Unenforceable" Because New York's Civil Usury Statute Does Not Apply to Loans Above $250,000

Powercap still fails to sufficiently plead how any alleged failure to provide advice about New York's usury laws proximately caused its alleged damages. Again, Powercap's theory of proximate causation is premised upon the incorrect notion that it loans have been rendered "unenforceable" due to the purportedly usurious terms to which Powercap and the Pollacks agreed. However, New York's civil usury laws only apply to loans below $250,000.[1] Here, because

---

[1] See General Obligations Law (GOL) §5-501, §5-511 and §5-521. While GOL §5-501 bars interest above 16% annually, and a loan that violates the civil usury law is void in its entirety under GOL §5-511, this statute applies only to loans below $250,000. GOL §5-521.

Powercap's loans were both above $250,000, the General Obligations Law does not apply and therefore the loans are not "void" or "unenforceable" as a matter of law.

### B. There is No Statutory Authority for Voiding a Loan that Violates the Criminal Usury Law

Powercap concedes that there is no authority for voiding a loan that violates only the criminal usury statute only. As noted in Attorney Fleischmann's opening brief, federal courts applying New York law have refused to void such loans, noting that there is only statutory for voiding a loan that violates the civil statute. See *EMA Fin. v. AIM Expl.*, 2019 WL 689237, at *7 (S.D.N.Y. Feb. 19, 2019); *Adar Bays, LLC v. GeneSys ID, Inc.*, 341 F. Supp. 3d 339, 352 (S.D.N.Y. 2018) (quoting *In re Venture Mortg. Fund, L.P.*, 282 F.3d 185, 90 n.4 (2d Cir. 2002) ("§ 5-511 voids a loan that violates the civil usury statute (§ 5-501) but says nothing about a loan that violates the criminal usury statute.... So there seems to be no specific authority for voiding a loan that violates the criminal usury statute without violating the civil usury statute."). *Accord Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC*, No. 13 Civ. 6562 (RJS), 2015 WL 4392081, at *5 n.4 (S.D.N.Y. July 15, 2015) ("If the Court were to find that the Agreement contravened New York's criminal usury law, the Court would nevertheless *not* void the Agreement *ab initio*, but would rather revise the interest obligation to require a non-usurious rate." (emphasis added).

Here, as noted in Point II(A) and in the above cases involving similar notes, loans above $250,000 are not voidable under the General Obligations Law. Accordingly, Powercap cannot establish that any alleged failure to provide advice about New York's usury laws proximately caused its loans to be void or otherwise unenforceable.

C.  **Powercap's Alleged Damages (If Any) Have Been Proximately Caused By Their Failure to Pursue Collection or Enforcement Remedies**

Aside from maintaining that discovery is required on this issue, Powercap makes no effort to refute the fact that its alleged damages (if any) have been caused by their own failure to collect or enforce their $1,015,000 judgment against the Pollacks. Powercap's complaint does not indicate what efforts (such as bank account restraints, garnishing wages, levying on third party creditors, securing liens on properties, and commencing fraudulent conveyance actions) it has made to recoup payment before suing Attorney Fleischmann for malpractice. Thus, Powercap concedes that its efforts to recoup its $1,015,000 loan and ownership interest in the three Brooklyn properties has been limited to litigating their related litigation in Kings County Supreme Court. As a matter of New York substantive law, Plaintiff's apparent failure to enforce its $1.015M judgment or pursue collection remedies prevents them from establishing Attorney Fleischmann's alleged conduct, rather than its own conduct or that of the Pollacks, proximately caused its alleged damages. *Sabalza v. Salgado*, 85 A.D.3d 436, 437 (1st Dept. 2011); *Brown-Jodoin v. Pirrotti*, 138 A.D.3d 661 (2d Dept. 2016).

## POINT III

## POWERCAP IS A "SOPHISTICATED CLIENT" WHO WAS SOLELY RESPONSIBLE FOR SETTING THE TERMS OF ITS LOANS

A.  **The Standard of Care Did Not Require Attorney Fleischmann to Provide Advice About the Terms of Powercap's Loans**

Powercap does not genuinely dispute that it is an experienced lending and equity firm which set the terms of its loans to the Pollacks. Nor does Powercap dispute that it never requested Attorney Fleischmann's review and advice on that subject matter. This is all confirmed by exchanges dated April 9, 2017 and May 14, 2017 (see Moving Aff., Exhibits B and G) which demonstrate that Powercap merely requested that Attorney Fleischmann immediately prepare loan

documents reflecting the terms to which those parties agreed, rather than advice about the usury laws or on the terms of Powercap's loans.

In these circumstances, the standard of care did not require Attorney Fleischmann to provide advice about the terms of Powercap's loans when it was only retained to memorialize an agreement to which Powercap and the Pollacks agreed. *See Merz v. Seaman,* 265 A.D.2d 385, 389 (2d Dept. 1999)("it must be supposed that Merz, as a banker, understood as well as anyone the consequences of a mortgage and a personal guarantee.") *See also 4777 Food Serv. Corp. v. DeMartin & Rizzo, P.C.*, 2013 N.Y. Misc. LEXIS 5520 (Sup. Ct., Suffolk Co. 2013)(plaintiff failed to articulate breach of standard of care claim against an attorney who simply memorialized an agreement that was negotiated by the plaintiff and a third-party.)

**B.**     **Powercap's Own Business Decisions Proximately Caused Its Alleged Damages**

Aside from stating that discovery is needed on this issue, Powercap does not genuinely dispute that its principal understood the potential risks of the usury laws but extended the risky, high interest loans to the Pollacks because it was in the business of extending such loans. Nor does Powercap challenge New York law holding that the imposition of a business decision on an attorney by the sophisticated client severs the "but for" chain of causation in a legal malpractice claim. *See Town of North Hempstead v. Winston & Strawn LLP*, 28 A.D.3d 746 (2d Dept. 2006) (a legal malpractice plaintiff cannot prove proximate causation when a sophisticated client imposes a strategic or business decision on the defendant attorney); *Stolmeier v. Fields*, 280 A.D.2d 342, 343, (1st Dept. 2001) (no proximate causation where sophisticated client was deemed to have been aware of the licensing requirement of which it allegedly was not advised); *Merz v. Seaman*, 265 A.D.2d 385, 389 (2d Dept. 1999) (plaintiff could not establish proximate causation because as a sophisticated client, plaintiff understood the risks of which the lawyer had allegedly not advised

him); *DiPlacidi v. Walsh*, 243 A.D.2d 335 (1st Dept. 1997) (documentary evidence demonstrated that the failure to close on a proposed sale was due solely to plaintiffs' own actions, and that there was otherwise no causal relationship between plaintiffs' loss and the defendants' malpractice).

Here, there is no dispute that Powercap independently set the interest rate of its loans with the Pollacks and imposed those decisions on Attorney Fleischmann. These independent business decisions were the proximate cause of Powercap's alleged damages rather than any alleged act or omission of Attorney Fleischmann.

## POINT IV

## NO LEGAL MALPRACTICE WAS COMMITTED

Contrary to the assertions by Powercap's counsel, Attorney Fleischmann does not "concede" that any legal malpractice was committed. Attorney Fleischmann's representation fully comported with the standard of care, and as noted at Point II, *infra*, Attorney Fleischmann did not draft documents "that ran afoul of the laws of usury" because the General Obligations Law does not apply to loans above $250,000.

## CONCLUSION

For the foregoing reasons and principles of law, Defendants' motion pursuant to F.R.C.P. 12(b)(6) should be granted dismissing the Complaint, with prejudice, together with such other, further and different relief as to the Court seems just and proper.

Dated: New York, New York
      January 25, 2021                        Respectfully submitted,

                                                FURMAN KORNFELD & BRENNAN LLP

                                                By:   /s/ Aaron M. Barham         
                                                         Aaron M. Barham, Esq.
                                                         Andrew R. Jones, Esq.
                                                *Attorneys for Defendants*

*David Fleischmann, Esq. and Law Offices of David Fleischmann, P.C.*
61 Broadway, 26th Floor
New York, New York 10006
(212) 867-4100
FKB File No.: 313.290